Good morning, Your Honors. Tony Bothwell for the plaintiff appellants, Michael Oksner and the other pilots. I would like to request three minutes for rebuttal at the end, please. I wish to thank the Court for the opportunity we are allowed to assist in analyzing the issues in this case. We have dropped the claims for injunctive and declaratory relief. I wish to submit the claims against the agency on the brief. Therefore, Your Honors, I wish to argue the claims against the individual defendants. Your Honors, the Supreme Court just very recently handed down the new standard in the Iqbal case, applying to Bivens' actions, requiring that supervisory officials must be alleged to have engaged in purposeful discrimination. Your Honors, we have the evidence that the individuals in this case, Jordan, Tilden, and Lacey, did enforce an age 60 discrimination, an age discrimination rule, in the knowledge that there was no rational basis for it. Rule 15A allows us the right to amend under the circumstances. It is an issue of fundamental fairness that arises when we were not allowed the opportunity to amend in this case. There was a difference between what the public statements were and the private statements were of the FAA officials. Privately ñ Can you orient us a little bit in time? What time period we're talking about is against the history of the rule. Well, yes, Your Honor, as to the history of the rule, the rule was instituted in 1960. It was instituted as a favor for the American Airlines chief executive, who had lost a series of labor arbitrations over the age 60 retirement policy of the airline. And it was a favor that was advanced by the first administrator, General Quesada, who became the head of the FAA. And over the years, we have internal FAA documents which confirm that the FAA officials, from the beginning and up to a very recent time, in their internal communications conceded that there was never any medical basis, never any safety or scientific basis for the rule. The motive of these individual defendants was one of economic favor. They perceived that they were doing something beneficial for airline executives, not to inconvenience them to have to change their retirement policies, and a political motive, political favoritism for a powerful union that was dominated by younger pilots who wanted to move up and who supported the age 60 rule. But there never was a rational basis for the rule. Now, the evidence shows Mr. Jordan, for example, in a meeting in Congressman Roybal's office with Austin and other FAA officials and NIH officials, conceded the fact that there was no medical basis for the rule. And other evidence indicates the same. And yet publicly, Jordan and Lacey, for example, in 2001, relied on distorted data which purported to show that there was a safety basis when, in fact, there was not. And they presented that publicly. That's what I wanted to get for you. You're talking about what happened when, with these defendants. The rule has been enforced up to the present time. Well, not to the present time. The age 60 rule was enforced until the Fair Treatment for Experienced Pilots Act was signed by President Bush in 2007. But the FAA has never recanted publicly from its allegations that there had been or that there was a safety basis. In reality, there was not. Mr. Bothell, may I interrupt you for just a second? Yes, Your Honor. On your Bivens claim, you're not, if I understand you correctly, disputing the trial court that you didn't allege specific and particularized allegations as to what role these individuals played in enforcing what you claim to be a discriminatory rule. You're just saying that the court erred as a matter of law in not allowing you leave to amend to allege those particularized and specific allegations. Is that correct? I almost agree with the way you characterized it, Your Honor. I would contend that we did, in the original complaint, make allegations that these individuals enforced the age 60 rule, which was discriminatory, and went a little bit beyond that. But in a proposed amended complaint, we added some more specifics. You filed a proposed amended complaint? We submitted, as an attachment to the opposition to a summary judgment motion, a proposed amended complaint. And yet since then, Your Honor — Wait a minute. Wait a minute. Hold on. As an attachment to a summary judgment motion, not a 26 motion? Attachment to a brief in opposition to the motion to dismiss. Pardon? Okay. So you're on the same track, right? And what did the Court say about your request for leave to amend? The Court said that there was not a motion for leave to amend, which is literally true, Your Honor, but it's fundamentally unfair in the circumstances that we've denied the opportunity to amend, especially since after our complaint was filed. Stop, stop, stop. In oral argument at the motion to dismiss, did you raise a request to amend your complaint, yes or no? Your Honor, there was no oral argument allowed. All right. In any of your papers in opposition to the motion to dismiss for lack of stating a claim for relief, 12b6 motion, did you request leave to amend? We did not file a motion for leave to amend, but we argued that we should be allowed to amend. You argued in your memorandum of points and assortments? Yes, Your Honor. Can you give me a citation to that? I'm sorry. I don't have the exact citation before me at the moment. All right. But it's in the record, Your Honor. We could submit a letter. Now, the Iqbal decision came down just recently, setting a new standard affecting the particularity and the content of allegations in a Bivens case where there are supervisory officials who are defendants. And purposeful discrimination needs to be alleged with more specificity than we did even in our proposed amended complaint. This is a new decision that came down just within the last few weeks. In the interest of fundamental fairness and justice, Your Honors, we hope that this case may be remanded so that we might have the opportunity to amend in compliance with the standard in Iqbal. Okay. Well, let me just ask this again because I'm not making myself very clear. The rule has been in effect and enforced for generations, essentially. These defendants, did they do anything or say anything of any different nature than any of the other administrators since the time that the rule was promulgated? That's what I'm trying to get at. They publicly maintained the same position. Same position. And yet privately took a contrary position. And, you know, this is not a case of incidental discrimination. This was purposeful age discrimination, intentional age discrimination. The issue was whether there was a rational basis for it. These defendants knew that there was no scientific or medical or other rational basis. If you ever ‑‑ I don't know if you ever reached the merits, it seems to me you're going to be thrown out in the New York Minute on the statute of limitations. I mean, this rule was adopted 50 years ago, wasn't it? Well, Your Honor, we've submitted ‑‑ It could have been challenged time and time again. In fact, it's been challenged many, many times on many, many grounds. There has not previously been a ‑‑ Why wouldn't it have been futile to give you leave to amend? There have been many cases over the years requesting exemption and so forth, which have no bearing here, Your Honor. The statute of limitations that Your Honor cites does not apply here because what I'm talking about today with respect is the claim against the individual defendants, the Bivens action. The six‑month statute or the six‑year statute applied to claims against the government. If we were here asking for declaratory ‑‑ I think in California the Bivens statute is two years, isn't it? Well, we're not bringing the action against General Quesada, who acted in the 1950s. We're bringing the action against the individuals who enforced this rule within recent years and within the statutory period. What is your claim as to the statutory period? Do you borrow from the state statute? The state statute may apply, Your Honor. To a personal injury case? Yes, Your Honor. Two years, California? We would contend that that would be a suitable statute of limitations. All right. So the Supreme Court Iqbal decision is very recent. We need to amend the Twombly decision, which affects the way that we need to plead. But we're having trouble seeing what you're going to say that's going to meet that. We're going to say that Mr. Jordan privately admitted that there was no scientific or medical basis for the rule, and yet he went on publicly stating to Congress, the press, the courts and others that there was a scientific basis, and relied on a ‑‑ what was essentially a fraudulent study, which compared the safety standards, that is to say, compared the number of accidents per 100,000 miles of flight time of commercial airline pilots under the age of 60 in comparison to the accident rates of less experienced pilots, pilots of small planes and general aviation over the age of 59. That was ‑‑ that's a simplification, but that was essentially the apples and oranges comparison. The FAA relied on that to say, therefore, pilots over 60 are less safe. The true data shows the opposite. There's a consensus in the scientific community that held to the opposite, and the study was not correct. To change the rule, what administratively would need to be done? Well, rulemaking could have been done. In fact, Congress intervened, and in December ‑‑ excuse me, in December 2007, the President signed the Fair Treatment for Pilots Act, which did change the standard from age 60 to age 65. Mr. Bothell, do you wish to address the point that was made by the trial court regarding the lack of jurisdiction over the named defendants? Well, Your Honor, I believe that by showing the particular action that the defendants took in enforcing the rule and combining that with the purposeful availment of the forum state in California, the defendants knew that they were enforcing a rule against pilots such as Mr. Oxner, Mr. Rogers, and others in California as well as in other states. And so they were harmed in California. How were they purposefully availing themselves of California law in California? Well, they were extending the long arm into California by enforcing the age 60 rule, suspending licenses of pilots who were resident in California and who frequently flew in and out of California airports. So there should be no surprise to the defendants that they could be subject to jurisdiction which seems reasonable enough that it would occur in California. But aren't you really arguing that they should have taken action to change the rule? Well, of course it's not. To enforce a law that was in effect when you took office seems to be a duty, not a purposeful discrimination. There is a duty not to follow a law that is unjust and unconstitutional. These defendants knew from the beginning. Just as the FAA attorneys back in 1959 in secret documents that we found out through Freedom of Information conceded there was no scientific or medical basis. They knew from the outset. Your time, if you want to reserve a couple minutes. Yes, Your Honor. Thank you. Thank you. Thank you. May it please the Court. Edward Himmelfarb for the Federal Defendant's Appellees. It might be useful, I think, to do a little bit of an inventory about where we are in the various claims in this case. The declaratory injunctive relief claim is that the declaratory relief, the plaintiffs admit that is moot. They've withdrawn the request for declaratory. I'm sorry. I guess the injunctive, I may have misstated that. The injunctive relief claim is moot. They've withdrawn the declaratory relief claim. So the first part of the first claim, the first claim is all out of the picture now. And that means that we no longer have to discuss the question of court of appeals jurisdiction versus district court jurisdiction. Although the issue is generally important to us, that's moot. We don't have to discuss the bringing the case 50 years after the rule. That's all out of the case at this point. Second is the FTCA claim. There's no claim here that there was any administrative claim presented to the agency as an absolute requirement under 2675. That's Title 28, Section 2675. So that claim is out of the case. It should be. That's our position. It should be out of the case. As for Bivens, this Court has two decisions at least that say that when there is when you're asserting a violation of your rights that normally would be enforced under the Administrative Procedure Act, you do not have the Court does not create a Bivens action. And that's the Skyad case and then the Morgan-Sklikman. So before you even get to the question of Iqbal or Twombly or the adequacy of the that the Bivens action cannot be created at all. And by my count, that gets rid of the entire case here. I'd be happy to try to answer specific questions. Is your point, if I understand you correctly, that our cases show that where there's a remedy under the Administrative Procedure Act, it's not a Bivens case because a Bivens case presupposes no remedy? Well, I wouldn't phrase it exactly that way, Your Honor, but I would say that there's These particular plaintiffs do not have a remedy, but that's not the issue. As a general matter, yes, there is an APA remedy. This is a dispute of the rulemaking. Well, yes. The APA remedy, I take it, would be to get the rules changed. Yes. And constitutional claims can be raised in APA proceedings. The APA specifically says that the Court has the power to set aside unconstitutional actions by the agency. Right. Now, does that give them damages for intentional discrimination? Isn't that to – isn't there still a Bivens claim to that? Well, Your Honor, to the extent they're talking about – Against the individual. They're talking about – the presumption in Bivens is that there's a constitutional claim against the individuals. Yes. And that is the type of – the type of claim is really that the – what they're making is that the rule is – there's something wrong with enforcing the rule. That is the kind of thing that you take under the APA. So it's – it would preclude the Court from creating a Bivens action. What about the fact that the statutory amendment is prospective only and doesn't afford these plaintiffs any relief? Well, Your Honor, I think – let me clarify what the statute does. The statute does three things, as I read it. First thing is it establishes that the new age limitation is 65. Second thing is it specifically abrogates the age 60 rule. It does that really explicitly. And the third thing is it says that if you were already affected by the age 60 rule, if you're over 60 but you're still potentially eligible – in other words, you're under 65 – you can be – you're eligible to fly if you meet one of two statutory conditions. And those conditions – one is that you're already performing the job of required flight deck crew member. I'm not sure if that language is exactly right. Or the other thing is that you're hired back without seniority. And that's been the subject of some dispute in the courts elsewhere, but that's not a disputed matter here. So the statute abrogates this rule. That's why it's moot. The first claim is moot here. And I'm not sure I answered your question, Your Honor. Well, I know. But how does that moot the Bivens claim? We're not claiming that it moots the Bivens claim. We're claiming the Bivens claim cannot go forward because this is an APA-type case. That's what I said. But they have no APA remedy. Right. Oh, that's correct. These specific plaintiffs have no APA remedy. I know. So what effect does it have? They had to retire at 60, and their claim is that it was unconstitutional to make them retire, and they're entitled to damages because these people were enforcing a law that discriminated against them. What's their remedy? Right now, they don't have a remedy, Your Honor. That has to do with the fact that the old rule that they were challenging is no longer valid. Well, so, no, I'm talking about the argument you made, which I think is supported by the cases that, you know, if there's an APA remedy, you can't bring a Bivens claim, right? That's right. But that presupposes that the APA remedy is going to be effective. No, it doesn't, Your Honor. With all respect, it's not. So even though the plaintiff's been totally excluded from any relief under, let's say, the APA or the statute, it doesn't matter. They still have no remedy. It's the type of claim that is brought under the APA. And the court is a case that says that in so many words, almost. I don't have an APA case that says that exactly, but this court decided a case in the early 90s called Saul against the United States, and that went through separately. Called what? Saul? Saul, S-A-U-L. And it went through looking at, you know, the situation when there was a remedy available and the situation when there's a remedy not available. And no matter whether there's a remedy available or a remedy not available, you still have a preclusion of a Bivens claim. So you think that case is at least pretty close? That's pretty close. And also, the Supreme Court's decisions have made clear that it does not matter whether a particular plaintiff has a remedy under the statute. If you have a civil service, a claim under the Civil Service Reform Act, push against Lucas, it doesn't matter whether you specifically have a way to pursue that. We're talking about in the broad terms. The statutory remedy in broad terms precludes the creation of Bivens remedies, no matter whether you have a remedy. Let me ask you a little different question now. I'm not quite sure, you know, what the procedure was in the district court, but plaintiff apparently takes the position that the plaintiffs made some attempt to amend their claim. And they have suggested to the district court in their, you know, in their memo in opposition to your motion to dismiss that they could amend or something like that. What is your understanding of this, you know, attempt to amend? My understanding is, Your Honor, that if you look at the proposed first amended complaint, which is in their excerpts of record, you see that there's nothing in there that would even support this claim on the merits. Again, you're referring to the Bivens claim? That's right. I think that's what we're talking about now. So in other words, you're saying the proposed amendment would be futile because there's nothing new in there as far as the Bivens claim goes? Yes, that's right. Nothing substantially new. There are obviously slightly new things in there, but there's nothing of any consequence that's new that would support a claim against a regulator who's applying a regulation that had been upheld repeatedly for close to 50 years. There has to be something more than just saying that somebody testified in support of it, somebody enforced it. That's just not enough. Okay. So we would ask the Court to affirm this. Thank you very much, Your Honor. Any further questions? No, not for me. Four quick points, Your Honors. The language of the Fair Treatment for Experienced Pilots Act makes unmistakably clear that it was the intent of Congress to provide no administrative remedy for constitutional violations arising from the enforcement of the Age 60 rule. Well, are you familiar with the Saul case that Mr. Wilford cites? And under that case, apparently you don't have to have a remedy? What's your response to that? I don't have the Saul case before me. I don't believe, Your Honor. I'm sorry. But I believe that the cases are consistent, that if the intent of Congress was clear enough that it was not to provide for any administrative remedy for a constitutional violation, and if a constitutional violation can be shown or plausibly alleged, then the Bivens claim is allowed to go forward. On another point, Your Honor, we do allege, and we will in an amended complaint if permitted to do so, provide specifics concerning the fact that these defendants were not motivated by public safety, but that they wanted to help the carriers they thought make more money and help the pilots union and help their own careers. And thirdly ---- I don't think it's going to help, because I think in terms of, you know, equal protection analysis, I don't think the motivation matters at all. Perhaps not, Your Honor, for its moral force. We just mentioned that. But thirdly, Your Honor, a Federal practice and procedure by Wright, Miller and Cain at Section 1485 says Rule 15a does not set forth any specific procedures for obtaining leave to amend. Iqbal was decided only very recently. It set a new standard. We have evidence and we can allege facts that have not yet been presented that will comport with the standard in Iqbal. All we ask for, Your Honors, is a fair chance to amend. Thank you, counsel. Thank you, Your Honor. The case just argued is submitted for decision. That concludes the Court's calendar for this morning. The Court stands adjourned. The Court is adjourned.
judges: Schroeder, Tashima, Bea